Morning, Your Honors. Jan Norman on behalf of the Appellant Mario Aleman. The first point I'd like to make is that in hindsight, the initial argument about the standard of review to be applied, I do not believe is going to prevail, so I don't intend to argue that. So I will address the Batson motion, and Your Honors, I think I've laid out pretty much everything that can be said as far as the Batson motion is concerned. So let me just summarize. Given that the AEDPA applies, then the showing must be that the state appellate court decision was based on an unreasonable determination of the facts. And in this case, my argument is that given the facts of what this particular juror stated, that the, stated that she was a member of the police, she worked in the police department, she had witnessed a crime, she had been, she had testified in a trial, that the prosecution's argument that she was prissy and inexperienced lacked credibility. Now, the second prong of that would be for the prosecutor to be, shall we say, forgiven, because he said, well, at the time I was doing this, I was too sick to know what was going on, so it was just an honest mistake. He said that before they selected the jury, didn't he? That there was evidence in the record that he was ill. He said he wasn't feeling well. That's certainly clear. I'm not contesting that he was not feeling well. My point is that he was feeling well enough to participate in jury selection. He was feeling well enough to sit there and take notes on the particular jurors. He was feeling well enough to note that the juror was a female Hispanic. And for him to then, and he was feeling well enough to exclude all of the Hispanic jurors up to that, all of his preemptive challenges were to Hispanic jurors. There seems to be, and I'm having a little trouble focusing on part of the record, the district judge said that the prosecutor actually accepted the jury with all the Hispanic jurors that were later excused. That's in ER 434 and 437, and in fact he appears to have done that at an earlier page, 431. But I think you argue that he, I mean, is that factually accurate? Did the prosecutor at some point or points say, I'll take all of them, and then defense counsel started challenging some, so he started challenging some? Yes, Your Honor, I believe that is the accurate depiction of the record. But my point is that when he started exercising preemptive challenges, four out of his first five preemptive challenges were for Hispanics. At which point, the defense counsel raised the Batson-Wheeler objection. The court found that there was an inference or a strong likelihood of discrimination. And then on the third prong? Well, on the third prong, it's a little strange. But basically, I don't know that the judge said exactly what he was ruling, that he had considered all the circumstances. But, you know, he basically says, I believe what the prosecutor was saying. I think he was honest. And then the trial judge came back later and said, oh, and by the way, I've also found a case that says if I deem the prosecutor to be honest but mistaken, that's still okay, that's race neutral. My argument is that he wasn't simply honest but mistaken, but basically given this record, and given the statements that were made by these jurors, he could not have honestly or mistakenly excused this juror. That in fact, it was a racial bias, and it was not reasonable for the court. So let me ask you a question on that. What I thought he made a mistake on was that one of the jurors said, I'm too prissy for police work, and that the prosecutor ended up saying that the juror he excused, Ms. Acevedo, I don't know if I'm pronouncing that right, but that he thought she was the one who made the I'm too prissy comment, and then the district court said, well, I think that's an honest mistake. Do I have the sequence right? Yes, you're correct, Your Honor. Okay. And the only real difference is that the judge came back the next day and said to the prosecutor, you're mistaken, she's not the one. Okay, not the prosecutor. Then he explained he thought he made a mistake, but the judge accepted that. So now this gets me to my question. I would have a lot more concern about this, the step three process here, if this was a direct federal appeal. But since it's AEDPA, am I right that the question we have is whether it is objectively unreasonable for the state appellate court to conclude that a trial court finding that a prosecutor made an honest mistake can satisfy the Batson challenge at step three? I think Your Honor has summarized the question very succinctly, and I think the answer is yes, it was unreasonable for the California Court of Appeal to reach that conclusion, given the record, which is that basically the prosecutor doesn't simply say, oh, gosh, I'm mistaken that she was prissy. The prosecutor goes on to explain that he must have had this confused, but that she had this general prissy demeanor and he wanted these jurors that were experienced and not afraid of these kinds of crimes. And my point is, given the background of this juror, which was that she worked in the police department, had witnessed a crime, had testified in a trial, that there was no reasonable basis to believe that she was inexperienced and lacked life experience. And therefore, it was unreasonable for the trial court and the California Court of Appeal to find that the prosecutor was credible. A couple questions. Now, so was Ms. Acevedo released and she left the courtroom that day so that when the trial court came back the next day, she was not present any longer? Right? Your Honor, I would assume so. The record normally, when a juror is dismissed, they leave, I don't think. Yeah, so I guess what I'm saying is, if there was a mistake, how would you undo it? How could that have been fixed at that time? What is the, okay. She's gone. She's gone. And she's gone based on a belief by the prosecutor that she's prissy. Actually, it doesn't even make sense to me, because I would think if you were prissy, you wouldn't necessarily be for the prosecutor. I don't know. But anyway, she's gone. So what do they do? What if he had made a contrary finding? Well, I think, Your Honor, at that point, if the trial court had correctly found that there had been a Batson-Wheeler violation, then I think at that point they have to excuse the whole jury and start over again. I don't think you bring the juror back and ask her, allow the prosecutor to question her further. I think that's the end of the story. You go back and start the jury selection on her. The judge, I'm sorry, the prosecutor excused four Hispanics. Acevedo was one. On this appeal, you don't challenge the dismissal of the first three. Is that right? That's correct, Your Honor. I think it's relevant in the sense of showing a pattern of excusing Hispanics, but we're not addressing the excuse. I mean, it seems to me, so here's the trial judge. He knows that the person is sick. He sees that four Hispanics have been excused, and over the prosecutor's objection, he quickly finds there's a prima facie case and requires the prosecutor to explain. The prosecutor references the prissy remark. The judge says there's proper basis to excuse. I find you're doing this in good faith. The judge, though, as far as I can tell from the record, on his own, worked harder on this, went back, read the transcript. I don't know that the defense counsel asked that and saw that there was a mistake. And there was some further colloquy, and the trial judge still thought it was a good faith error and not a pretext for discrimination, in part because the prosecutor had been willing to accept all these people early on. Isn't some real deference due to the trial judge's observation of demeanor and the careful way that he dealt with this issue in reaching his conclusion that it was a mistake and not a pretext for discrimination? Well, certainly, Your Honor, the trial judge, as the cases discuss, has the better ability to assess the credibility of the prosecutor. My point is that when the prosecutor came back and explained, okay, she wasn't prissy, but she fell in this group of people who were, you know, inexperienced and would be perhaps frightened or dismayed by the nature of the crime, it didn't fit the facts of who this particular juror was. And I don't, I mean, you know, at that point, I don't think it's an honest mistake on the part of the prosecutor. And the judge isn't. You're taking up all the time. Oh, I'm sorry. Let me. You should finish your answer, but. Oh, in simply that it wasn't a credible answer and that the Court made a mistake in finding. Sorry. That's okay. So was there any comparative jury analysis done in this case, either in connection with the direct appeal? I mean, who remained on the jury? Oh, I don't believe that there was. There's no analysis? No. So we don't know who was on the jury, but we know that there was one of the deceased police officers was Hispanic, correct? Yes. And two. One of the deceased police officers? Yes. I don't think any of them. No. Victims? They were shot at, but not killed. They were shot at. Yeah, nobody was killed. All right. Attempted murder. I'm sorry. I'm trying to figure out what the composition of the people in the courtroom looked like at the time this was all happening. Like, we had two defendants who were Hispanic. One victim was Hispanic. Yeah, I don't believe that it was ever discussed. I mean, it was ever determined at the end, you know, we still have some Hispanics on the jury. So what I'm trying to find somewhere in the record, which I can't find, is what would be the motivation for the prosecutor to be excusing Hispanics in this case? Well, because he was excusing pro-defense Hispanics. That's kind of a mixed motive, right? Well, it wasn't – here's the way I see it. If I could just back up a little bit. I just wanted to say that working on doing these voir dire bats and issues, you know, I go to these UCLA basketball games, and they have, like, hide the ball, and you look on the screen, and they're moving the ball around. You have to figure out which little bear the ball is under. I mean, that's what this voir dire is like when you're dealing just with these numbers. I mean, they keep switching numbers, and it's very hard to figure out which – where the ball is. They're changing seats. Yes. Yes. So I just wanted to say that. But also I wanted to point out, just my analysis, that the California court relied on the wrong reasons. They were unreasonable reasons. Number one, the fact that the prosecutor accepted many times the jury, with Hispanics on it, doesn't mean anything because I think this case, Williams v. Reynolds, this court has reached a decision in Williams v. Reynolds, cited in my brief, that just because the prosecutor accepted it many times isn't an excuse. Because what the prosecutor did, knowing that the defense was going to be kicking off some jurors, the prosecutor waited until those jurors got kicked off and then made his strike. So that's, I think, where the systematic discrimination comes in, because he systematically waited. He knew. I mean, sometimes, you know, I've done trials. You know who's going to go and who's going to stay. So he knew that the defense, and I think this court has recognized it in its opinion, the prosecutor knows that the defense is probably going to kick some more off. Then he made his strike. Well, I'm not familiar with this form of jury selection, but wouldn't the trial judge have known that tactic might be used, too, and isn't that part of the whole gestalt of information the trial judge would take into account? Well, I don't think the trial judge said anything about that. I don't think he said, listen, he did say that the prosecutor accepted many times, but this Court has said that's not a viable reason. That doesn't excuse. This case is Williams? Williams v. Reynolds, 432, Fed 3rd, 1102 at 1109. Does it say that that alone is not necessarily sufficient? Or does it say it's not a legitimate, cognizable consideration? I believe that's what it says. Which? It's not a legitimate. You can't use that as an excuse. You can't. I believe that's what the case said. And then our own California Supreme Court has said that because the defense has also systematically excluded Hispanics, that's not a reason also. That makes sense. So we have two reasons, you know, that the judge relied on and the court of appeal relied on that are really no good. Yeah. I don't think that the judge relied. I know that the court of appeals relied on it. It's on 046. I didn't see that the trial judge relied on it. I believe that the trial judge did. That's why the court of appeal did it. So that's my understanding that the court said it many times. The court did find it as a mitigating factor. If you look on page, I don't know what, it's my footnote four. Before requiring the prosecution to state his reasons for striking the Hispanic jurors, the trial court found a mitigating factor naming while four of five have been Hispanic. They also accepted the jurors and then also noted that the defense had excused several Hispanic jurors. So that is in my brief when I discuss the court of appeal opinion. Okay. So that was the factors that the court did consider. And I did also wanted to point out just two more things. Snyder v. Louisiana. I'm not sure that this Court had actually, you know, in the discussion with the prior counsel, had brought it up. The Court was concerned with the third prong of Batson. But, in fact, what this judge did not do was determine whether the juror's demeanor exhibited the basis for the strike. We don't know. I mean, assuming the prosecutor is honest, okay, but he honestly believed whatever. But the question is, did the strike, did his, was the strike justified? It might. Here, on the simplest level, the prosecutor says, she said she was prissy. I don't want prissy jurors in this case. It's a miss and that was mistaken. She's not the one who said it, if it was that simple. But the fact that it's a mistake doesn't mean it's a pretext for a motive prohibited by the Fourth Amendment. I think the Ninth Circuit talked about that somewhat in, I'm going to mispronounce it. There are two Ninth Circuit cases cited in the district court. Mittleder, 391 F. 3rd, 1039 to 1049. Because if the person, if the judge genuinely believed this person is ill, this person is confused, he didn't ---- Prosecutor? The prosecutor didn't dismiss the juror who felt she was prissy, and he meant to. The prosecutor made a mistake, but that's not a violation of equal protection. But here's my issue with that, and I, you know, join in counsel's. So a prosecutor gets a free pass if he doesn't feel good? You know what I mean? You don't get a free pass to discriminate, but it may explain why something that in other circumstances would appear pretextual is actually a good faith mistake and not a violation of somebody's right to equal protection. But I'm not sure. I think it goes beyond just the prosecutor. I think the court, what we're missing is, in Snyder, the second prong. Did the judge know who? Well, first of all, everybody got the jurors mixed up, it looks like. Juror number A said, she was a Hispanic one. She said that she did not want to be a police officer because they have to, they have a lot of pressure and stress. That was Acevedo's real statement. Yes. Okay. The judge thought, she said, that she would not be a match for an assailant, which was actually juror number 13. Okay. Juror number 13 said she would not be a match for an assailant. Okay. So, but that's the one that the judge relied on. In other words, the judge never. It was wrong, too. Yes. And juror number 17, who stayed on the panel, was the, I believe, she stayed on the panel or later excused by somebody. I can't remember who now. But she was the one that said, prissy. So in other words, the judge didn't even make a determination whether or not the prosecutor, I believe the prosecutor's, okay, you're honest. Prosecutor, I understand you were confused. Okay. But we don't know why this juror was excused. Okay. We don't know why. I mean, she said she, there was nothing. Well, the judge said at 492, I think this is on the second day, the question is now a legal question. When that justification, the prissy, no longer exists. When I'm going to make a factual finding, Mr. Ipson told the clerk first thing in the morning, he was not feeling well, just wasn't operating in all cylinders, that's why we left early, he just wasn't all here basically. I will find that he believed that the remark came from that juror being an honest remark. Now, it's a legal interpretation of what, if any, consequences. But it's hard to say he did it with a racial bias or ethnic bias because he thought he was doing it for a valid reason. Okay. But then, but then, okay. But the question is, okay, so that goes to the prosecutor's motive. The prosecutor had, okay, I believe the prosecutor was honest, didn't make a mistake. But the second problem. Did make a mistake. Did make a mistake. But under Snyder v. Louisiana, they still have to make a determination whether the juror's demeanor exhibited the basis for the strike. I'll look at it, but I wouldn't see how that would follow from a logical thing, because he, the prosecutor thought he was striking the juror who said, I'm prissy. If he made an honest error, the demeanor wouldn't matter. He had the people confused. And I don't understand this process at all. I'm very gratified to hear that you have trouble following the ball, too. Although maybe if you had a different judge, you would have been at the USC game. Yeah. It was a tough loss last night, wasn't it? Yeah. It was really bad. Okay. Well, you're well over your time, so why don't we hear from the government then. And I would just ask the Court to look at Snyder v. Louisiana. It's a U.S. Supreme Court case. Thank you. Okay. We'll give you some time for rebuttal. Good morning. May it please the Court. Supervising Deputy Attorney General Michael Johnson on behalf of the Warden. There is no persuasive reason in this case to discard the trial judge's credibility determination, and certainly Petitioners haven't shown that that determination was wrong beyond any possibility for fair-minded disagreement, which is the extraordinarily high standard that applies here. This is the thing that really puzzles me. This is a practical question. If the prosecutor thought she was prissy, given the factual circumstances of this case, why would he want her off? I mean, if she was prissy and sensitive, wouldn't she be more likely to go with the biggest, I don't know, they set up the police to be killed by a sniper, and essentially ambush the police in a horrible part of the city? I think putting myself in the place of a prissy person, I'd probably gravitate right to the prosecution there. So why would he preempt her? Well, the way the prosecutor explained it, and of course, exercising peremptories is more art than science, he was going for a jury that wouldn't sort of shrink from the situation. But I also think it's dangerous to just look at that in isolation. You have to really look at the whole record, the fact that it was well-documented that he was having trouble concentrating. And I think the way that he explained it was basically the only thing he had written down on his little Post-it note was the word prissy and drew a box around it. Later, when he went to exercise his peremptories, he was drawn to that and thought that this juror sort of fell into that category of people that he was trying to stay away from because he thought this was a mature case. And I also think the other factors, which the court has picked up on, all inform the credibility determination. And that is that the prosecutor accepted the panel several times with Hispanic jurors on it, apparently. But I don't think that's a legitimate ground under our law. It certainly isn't sufficient to show no racial motivation. But the trial court, who was, as Judge Wolf pointed out, a fairly astute judge on this issue, actually cited a case saying, I know this isn't sufficient, but it is something I can take into consideration as part of the total picture. So I'm going to look at that. This was also a case in which the defense was exercising many more peremptory challenges than the prosecutor. And at one point, the prosecutor became concerned about that. This was actually later during voir dire, and said, look, I've basically been letting the defense choose this jury. But at a certain point, they're really skewing things. The judge agreed with that. And that, I think, was something that was also pointed out at the time of the Batson motion. I think, if I have my numbers right here, at the time of the motion, the defense had already exercised 14 challenges. The prosecutor had exercised five. And significantly, the prosecutor had accepted the jury 12 times. The defense had never accepted the jury to that point. So I think that's also something important just to keep in mind as part of the total picture. For all of those reasons, I think that the record only supports the trial judge's credibility determination here. And we just heard the argument in reliance on Snyder v. Louisiana, which I at least will have to go and read. But can you address Snyder? Yes, Your Honor. Well, I cited Snyder prominently in my brief because I think it supports our position. Snyder talks in some detail about the deference that's owed to a trial judge's determination, given the fact that the trial judge is the one in the courtroom able to observe the prosecutor in action, so to speak. In terms of the specific point that the trial judge is obligated to make a determination regarding demeanor, I think the Court's right. That's not really what's at issue here. There was no issue of a juror's demeanor. First of all, it was the juror's statement. It was her self-description that she was prissy. I don't know. Perhaps some demeanor could have corroborated that. But I think what the prosecutor was relying on was the description. But perhaps more importantly, really the issue is the mistake and whether that was a pretext. And I just think it's sort of fantastical to think, given that this was well-documented on the record, that the prosecutor would have sort of come into court that morning thinking, I'm going to discriminate today, so I'm going to plant these seeds, create this record, and then if I get caught, I'll be able to get a free pass. And as the Court pointed out, there's no free pass on discrimination. But certainly the well-documented lack of concentration plays an important role in this case. And I think essentially what petitioners have been able to point to are, at best, debatable inferences. And we know after Rice v. Collins that debatable inferences will not suffice to support a Batson claim under 2254. Counsel, if I may ask a question. Is there any Supreme Court precedent that addresses whether a mistake of fact, like a striking prosecutor thinking juror X was really a different person, whether that can resolve a Batson step three stage conclusion? No, Your Honor, I'm not aware of any Supreme Court case on that specific issue. I wasn't able to cite one in my brief. But I certainly think it's logical to conclude that a mistake has no inherent racial component to it. So the real question is just, again, whether the child judge's determination after having looked at all the facts, talked to the prosecutor, witnessed the voir dire, whether his determination that that explanation was credible should be thrown out on appeal, essentially. And I contend that for all the reasons we've discussed, there is no reason to discard that credibility determination. And certainly under 2254, there's nothing to show that it was wrong beyond any possibility for fair-minded disagreement. But would the appellant, under your view of the case, of the law, have to show that the judge's conclusion that the prosecutor made an honest mistake is an objectively unreasonable determination of fact? Yes. That word would come in analytically under the ADPA? Yes. 2254d2 is how the Supreme Court in Rice v. Collins analyzed it. Thank you. But we do have a Ninth Circuit case on point. On the mistake point, which I think I cited in my brief. I think you did. Yes. And if that's all, I'll submit. All right. Thank you, counsel. Give you a couple minutes. And do you want to discuss the COA issue too? COA issue? Expansion of the COA. Oh, yes. I'd like to do that. If I could just get a minute on the rebuttal of the ‑‑ I would ask the Court to look at Snyder v. Louisiana again, because they ‑‑ there is a second prong which says the trial court must evaluate the juror's demeanor. In other words, okay, so he made a mistake. But wait a minute. I don't see any reason why you would kick off this juror. So ‑‑ and that wasn't what the Court did. In fact, the Court got ‑‑ Whose demeanor is he supposed to examine if there's a mistake as to whether, you know, the juror is A or B? Okay. Well, then, but he never gave any reasons why he kicked off juror A. We don't know why. He thought she was prissy, but no, that's not the reason. So what was the reason? No. The reason is he thought she was prissy. He just was confused as to who was prissy. Okay, well, then the trial court never made a determination that I do agree with you she was kind of prissy, which he did in other cases. He said something about I wouldn't want him sitting on my jury, but the trial court never did it in this case. And I think the other factors about defense kicking off jurors and the fact that the prosecutor accepted it many times, those don't fly as justifiable reasons. So we have a prosecutor, really, who waited until the defense kept striking and then made his strike, which is, you know, I don't know if it's strategic or systematic or what, but I just wanted to point that out. And if the Court could just look at the Snyder v. Louisiana. In terms of expanding the certificate of appealability, yes, that's a critical issue. Is that exhausted? Yes, definitely. It has been exhausted. And, in fact, what my client, Mr. Maldonado, he was hit four times in the back. He was shot four times in the back by the same officer who earlier had killed somebody under similar-type circumstances. Now, I don't know how that could have been excluded. And then on another occasion that the ---- You couldn't get it in in Federal court. It would be inadmissible under Federal Rule of Evidence 404B as other bad acts. Well, I think that ---- To show character, propensity for something. Well, you can do that. In California, under California law, you can admit prior bad acts of the victim if they're acting in conformity. It's just not limited to the defendant only. So ---- So what is the expansion of the COA that you'd like here? Well, whether the trial court deprived Mr. Maldonado of his right to prepare and present a defense. How would that ---- how would that win police officers, if it's even true, because we don't know prior violent acts, help your client's theory of the defense? Well, because, number one, if I could just get my brief for a minute. Well, it would have helped tremendously, because there was an issue of credibility. I mean, the police said that he was set up to go into this, you know, that the drivers set them all up to go into the area, when in fact ---- and that ---- and there was an issue of who shot first and whether it was a setup. And here you have an officer who in the past shoots at unarmed people. In other words, that is his pattern. So there was a credibility issue as to whether who shot first and whether they were set up by a sniper, or this guy just is trigger happy. So that's really why the reason as to what started this whole firefight, you know, the whole battle. He had an incident. He had a pattern of violence against suspects. And instead of ---- Well, let's assume for a minute that he was a violent cop. Okay. And that he had gone off the handle some other times. And let's assume that were true. That wouldn't be a defense if the defendants were sniping at him or shooting at him in his car, right? Or why would that be a defense? It would be a defense because they're saying that the police officers shot first. They're ---- what ---- he was ---- Mr. Maldonado was trying to show, we didn't ambush anybody. I mean, I'm the one that got shot four times. The police officers were wrong. We didn't do anything. In other words, this started out as a simple robbery and ended up as an attempted murder with the police shooting my client. So it would really be ---- I mean, do you believe the officers when they say, okay, you know, they set this up and we had to shoot and when, in fact, they really didn't, that this officer was the one who attempted to shoot them? They were acting in self-defense. What would the ---- what do you say the evidence would have been if the judge had admitted it? They would have shown that this officer, Langerica, had a propensity for violence. But no, but specifically what? One incident? Two. In the past year, I believe. And under similar circumstances, they stopped a guy for nothing or they chased a guy for nothing. He was totally unarmed and they shot and killed him. So there's an excessive force defense under, you know, when police officers use unreasonable amount of force. It's like a 1983 action, I think, in federal court. Okay, so there was a question. Were the police making up this thing about some sniper and a gun and the bicycle? Okay, was that made up to cover up for this officer's ---- Wasn't there physical evidence of all of that? Pardon me? Wasn't there physical evidence of all of that? I think there was a bicycle, but there was a question about the shooting as to who shot first. As to who was the sniper and who wasn't the sniper. There was a whole issue as to that. And not only that, they tried to say that my client, you know, shot at them. But in fact, he didn't. He hadn't even been able to take out his gun. So there was a real 1983 issue. I know that whenever police officers use excessive force, there are extensive investigations into how that happened. So by saying, you know, but the jury should have known that. All right. I think we understand. And you're over your time. Okay, thank you. Thank you very much. Do you have anything you want to say on that issue? Your Honor, frankly, I am not prepared to address that issue in any detail. I didn't look at the uncertified issue in particular. The jury doesn't respond to it either. That's correct. My recollection is only, you know, from ten years ago, having briefed this case in the California Court of Appeal. I just don't think that the notion that the police were the aggressors in this case would have flown in the trial court. All right. Thank you very much, counsel. Thank you.
judges: Wolf, Wardlaw, Gould